## Ex parte Santiago et al., Peticionarios y Apelados, y El Pueblo, Opositor y Apelante.

Apelación procedente de la Corte de Distrito de Ponce en un caso de autorización judicial para transar una acción de petición de herencia de hijos naturales.

No. 1124.—Resuelto en agosto 1, 1914.

Transacción—Estado Civil de las Personas—Interpretación Restrictiva.— Como la autorización que concede el Código Civil para transar es general y amplísima, la limitación que contiene el artículo 1715 relativa al estado civil de las personas debe aplicarse en sentido restrictivo.

Id.—Acción de Filiación y de Petición de Herencia—Menores de Edad— Autorización Judicial para Transar la Acción de Petición de Herencia.— Cuando, como en el caso de autos, varios menores demandantes ejercitan contra una menor demandada las acciones de filiación y de petición de herencia y ambas partes están conformes en transar la acción de petición de herencia y piden autorización judicial a la corte, por existir menores, para llevar a efecto dicha transacción, no comete error la corte al aprobarla, habiéndose justificado previamente su necesidad y conveniencia.

Los hechos están expresados en la opinión.

Abogados de los apelados: *Sres. José A. Poventud* y *José Tous Soto.*

Abogado del Pueblo: *Sr. Charles E. Foote, Fiscal.*

El Juez Asociado Sr. del Toro, emitió la opinión del tribunal.

En la Corte de Distrito de Ponce se siguen cuatro pleitos sobre filiación y petición de herencia, contra la menor Teresa Santiago y Oppenheimer y contra su legítima madre Isabel Oppenheimer Dalmau. Uno de dichos pleitos se interpuso por Alfonso y Epifanio Colón; otro por los menores Rafael Antonio, Ana Celia y José Teodoro Vázquez, representados por su madre natural Elena Vázquez; otro por el menor Florencio María Colón, representado por su madre natural Antonia Teresa Colón y Pérez, y otro por el menor Manuel Antonio Vega, representado por su madre natural Rosaura Vega Norat.

En cada uno de dichos cuatro pleitos la parte demandada

alegó con respecto a la primera causa de acción, o sea a la de
filiación, que la demanda era insuficiente, y en cuanto a la
segunda causa de acción, o sea la de petición de herencia, pro-
puso transacción. Cada una de las partes demandantes aceptó
la transacción propuesta, pero como en tres de los pleitos
los demandantes son menores de edad y es también menor
de edad en todos los dichos pleitos una de las demandadas,
fué necesario acudir a la corte de distrito competente en soli-
citud de la autorización que ordena la ley. Acudieron en efecto
a la Corte de Distrito de Ponce la menor demandada Teresa
Santiago Oppenheimer, representada por su legítima madre
Isabel Oppenheimer, y los menores demandantes, y repre-
sentados también por sus respectivas madres pidieron que
los autorizara para transigir en la forma que veremos más
adelante. El fiscal del distrito se opuso, y la corte, después
de oir las pruebas ofrecidas, concedió la autorización solici-
tada. Y contra la sentencia de la corte, interpuso el Fiscal
del distrito el presente recurso de apelación.

De la solicitud aparece que el 15 de abril de 1913, falleció
en Coamo Teodoro Santiago Rivera, bajo testamento ológrafo,
protocolizado después debidamente, en el cual instituyó por
sus únicas y universales herederas a su hija menor de edad
Teresa Santiago Oppenheimer y a su consorte Isabel Oppen-
heimer Dalmau; que después del 15 de abril de 1913 se pre-
sentaron en la Corte de Distrito de Ponce las demandas a que
nos hemos referido, contra los herederos del Sr. Santiago;
que en todas dichas demandas se alega que los demandantes
son hijos naturales reconocidos del dicho Sr. Santiago y
que como tales tenían derecho a participar en su herencia,
y que el Sr. Santiago dejó a su fallecimiento un capital líquido
de $305,851.59, del cual deducidos los gananciales correspon-
dientes a la viuda, o sean $16,665.21, quedaban como heren-
cia partible $289,186.38, y siendo la legítima rigurosa corres-
pondiente a la única hija legítima $96,395.46 y siete el número
de los hijos naturales que reclaman, correspondía a cada uno
de éstos la suma de $13,770.78.

En la petición se incluyen las transacciones propuestas. En todas se estipula que la parte demandada consiente en que se dicte sentencia oportunamente en su contra por la suma de siete mil dollars para cada uno de los demandantes y se especifican los bienes con los cuales se hará efectiva dicha suma. Las siguientes cláusulas son comunes a las cuatro transacciones propuestas:

"IV. La entrega y adjudicación de tales bienes se efectuará dentro de los tres meses siguientes a la fecha de la sentencia que se dicte, en cualquier sentido, sobre la primera causa de acción, o sea, acerca de la filiación o reconocimiento de la parte actora.

"V. Esta oferta de transacción, y su aceptación en su caso, no surtirá efecto alguno, ni será eficaz, por tratarse de bienes y derechos de la menor codemandada, hasta que no se obtenga por los interesados la aprobación judicial de la misma, mediante la correspondiente petición de autorización judicial, con intervención del Fiscal, y sea firme la resolución concediéndola; ni será eficaz tampoco si por cualquier motivo no llegare a surtir efecto cualquiera de las transacciones propuestas, en igual sentido, en los pleitos entablados ante esta misma corte por Rafael Antonio, Ana Celia, y José Teodoro Vázquez, Manuel Antonio Vega y Florencio María Colón, representados los cinco últimos menores por sus respectivas madres que les han reconocido, contra esta parte demandada, sobre las mismas materias y con respecto a la misma herencia.

"VI. Respecto de la primera causa de acción sobre filiación, ejercitada en la demanda enmendada, no se propone transacción alguna, por tratarse ahí del estado civil de la parte actora, limitándose esta transacción a las consecuencias económicas que pueden nacer de la filiación reclamada, o sea, a la segunda causa de acción sobre petición de herencia; quedando en consecuencia, dicha primera causa de acción sobre filiación, sujeta a lo que por la correspondiente sentencia resuelva la Hon. Corte."

En la solicitud se expresa, además, que las ofertas de transacción fueron aceptadas por los demandantes en los repetidos pleitos, se consignan todos los datos que la ley exige y se hacen las siguientes consideraciones:

"6. Que las transacciones propuestas son útiles y necesarias, así para la menor demandada como para los menores demandantes; para

la primera, porque de prosperar las demandas en cuanto a la segunda causa de acción, que se transije, se reduciría su herencia en el importe íntegro del tercio de libre disposición o sean $96,395.46 mas o menos, al paso que mediante la transacción propuesta sólo tiene que sacrificar de dicha herencia la suma de $7,000 para cada uno de dichos demandantes o sean para los 7 la cantidad de $49,000. Para los segundos, porque de no prosperar su demanda por cualquier circunstancia, como deficiencia de evidencia u otra semejante, no percibirían ni un solo centavo de la herencia de su pretendido padre natural, al par que mediante esta transacción, asegura cada uno la cantidad de $7,000, aun en el caso de que el resultado del juicio les sea adverso.

"7. Que además dicha transacción es conveniente para todos los menores demandantes y demandada en los referidos pleitos, por evitar gastos cuantiosos y dilaciones perjudiciales y por poner término a este pleito en cuanto a la acción de petición de herencia y evitar pleitos ulteriores en cuanto a la administración del caudal hereditario, tasación del mismo y división entre los herederos.

"8. Que la suma de $7,000 que se adjudica a cada uno de los demandantes en pago de su posible y eventual haber hereditario es razonable, teniendo en cuenta la cuantía que podría corresponderles en caso de prosperar sus demandas, y la posibilidad de que éstas no prosperen, o de que prosperen después de cuantiosos gastos y de demoras de varios años, por razón de poder llevarse en apelación este caso hasta la Corte Suprema de los Estados Unidos en consideración a la cuantía envuelta en cada caso."

En su sentencia apelada, la corte de distrito después de exponer los hechos necesarios, consigna y resuelve lo que sigue:

"Por cuanto, la corte estima debidamente justificado que las transacciones propuestas y aceptadas en los mencionados casos, son útiles, necesarias y convenientes así para la menor demandada proponente como para los menores demandantes y aceptando, por evitarse con ellas cuantiosos gastos y dilaciones perjudiciales y por poner término al pleito en cuanto a la acción de petición de herencia en cada caso, y evitar pleitos ulteriores en cuanto a la administración del caudal hereditario, tasación y división del mismo entre los interesados, y por estimar la corte razonable la suma ofrecida a, y aceptada por, cada demandante, habiendo en consideración todas las circunstancias de cada caso, según la petición presentada y la prueba

practicada, así como por todos los demás motivos y razones que en la predicha petición se expresan, estimando la corte igualmente que el justiprecio de los bienes que se ofrece adjudicar a los menores demandantes en pago de sus posibles haberes hereditarios, es justo y razonable.

"Por cuanto, el Hon. Fiscal del Distrito, en el acto de la vista de esta petición, formuló su oposición por entender que las transacciones propuestas según en la petición se alegan, se refieren al estado civil de los menores interesados y sostuvo que, según el artículo 1715 del Código Civil Revisado, no puede haber transacción en tales casos, cuya oposición y objeción la corte desestima en todas sus partes porque las transacciones propuestas y aceptadas se refieren únicamente a las consecuencias económicas que puedan nacer de la filiación reclamada, a que se refiere la segunda causa de acción sobre petición de herencia ejercitada en los pleitos referidos, quedando expresamente la primera causa de acción sobre filiación, que es la única que trata del estado civil de los demandantes, sujeta a lo que la corte por la correspondiente sentencia resuelva, por lo que la corte estima que dichas transacciones son válidas y eficaces una vez impartida la aprobación judicial a las mismas de acuerdo con el artículo 1712, párrafo 2°., del Código Civil Revisado.   (V. 12 Manresa, 114, 118 y 119.)

"Por tanto, la corte declarando con lugar la petición sobre autorización judicial para transigir presentada por las peticionarias, concede la autorización judicial para transigir solicitada por las promoventes, por razón de utilidad y necesidad, y, en su consecuencia, aprueba en todas sus partes las mencionadas transacciones propuestas y aceptadas en los pleitos pendientes (se nombran), y solamente en cuanto a la segunda causa de acción sobre petición de herencia, y en los términos concebidos en dichas respectivas ofertas de transación y acceptaciones de las mismas, según se exponen en la petición presentada; *Disponiendose* que el dinero que obtengan los menores demandantes como consecuencia de dichas transacciones, quedará a disposición de esta Hon. Corte, entregándose en la secretaría de la misma, para ser invertido bajo las instrucciones y órdenes del tribunal, con la intervención del Fiscal del distrito, y respecto a los demás bienes serán puestos dichos menores, por medio de sus representantes legales, en posesión de los mismos, tan pronto sea firme esta resolución, y en los términos y fechas convenidos en las referidas transacciones."

El artículo 1715 del Código Civil Revisado, dice:

"No se puede transigir sobre el estado civil de las personas, ni sobre las cuestiones matrimoniales, ni sobre alimentos futuros."

Estamos conformes con el Fiscal apelante en que las dos acciones ejercitadas en los cuatro pleitos de referencia están tan íntimamente relacionadas, que difícilmente pueden separarse la una de la otra. Esto no obstante, atendidas las circunstancias concurrentes, opinamos que debe confirmarse la sentencia apelada.

En la obra "Texto y Comentarios al Código Civil Español," por la Redacción de la Revista de Derecho Internacional, con un resumen crítico de Pedregal, se dice, al exponer ciertas consideraciones generales sobre el contrato de transacción, lo que sigue:

"Aunque la transacción ha sido siempre un medio fácil y expedito de dirimir las contiendas suscitadas entre particulares, nuestras antiguas leyes se habían preocupado muy poco de regular este contrato y de darle la amplitud y desarrollo que su importancia requería; sólo una ley de Partidas se ocupaba de él expresamente, y alguna otra por incidencia. Sin embargo, en la práctica se suplió el silencio de la ley con algunas máximas dictadas por la jurisprudencia de los autores y tribunales, las cuales han sido recogidas por el código que las ha incluído entre sus preceptos, regulando así una materia que carecía de disposiciones legales."

"La importancia de la transacción es tan indiscutible como manifiesta es su utilidad. No sólo facilita la solución de las diferencias surgidas entre dos o más individuos, sino que les dignifica bajo dos conceptos: les hace, en primer lugar, árbitros de la cuestión litigiosa, depositando en sus manos todo el poderío del juez y personificando en ellos la más alta de las funciones sociales, la administración de justicia; y, en segundo lugar, mueve a cada una de las partes a ceder algo de sus derechos, dando un ejemplo de laudable condescendencia. Y sobre todo esto resalta la utilidad de la transacción, si se la considera como medio de evitar los gastos que consigo lleva todo litigio y las enojosas molestias que son anejas a las cuestiones judiciales."

Pedregal, Código Civil, p. 789.

Refiriéndose Sánchez Román al concepto del indicado contrato, dice:

"Como fórmula de paz, que busca una decisión en la soberanía de la voluntad de los mismos interesados, puestos de acuerdo para resolver los puntos sobre que disienten en sus respectivas pretensiones, es altamente laudable y de un sentido práctico y conveniente, harto fuera de duda, realizándose por él, en actos concretos, el principio de la solidaridad humana y las corrientes de fraternidad y cordialidad entre los hombres." 4 Sánchez Román.—Derecho Civil.— 2ª. ed., 949.

Y refiriéndose ya directamente a la cuestión envuelta en este litigio, dice Manresa, en su comentario del artículo 1814 del Código Civil Español, igual al 1715 de nuestro Código Revisado, lo que sigue:

"Pero entiéndase bien que esa prohibición debe interpretarse en sentido restrictivo, y entenderse limitada tan sólo a lo que dejamos indicado. Así es que algunos tratadistas estiman perfectamente válida la transacción sobre las consecuencias económicas o sobre el interés pecuniario que surgen o nacen del estado civil reclamado, como, por ejemplo, sobre los derechos que pudiera tener en la sucesión de su padre el hijo natural cuya declaración de tal demandase en juicio, en cuyo caso los hijos legítimos, que habrían de heredar en concurrencia con él, conforme a lo dispuesto en el artículo 840, podrían transigir válidamente con él acerca de la cantidad que debiera percibir en tal concepto, en sustitución de los derechos legitimarios que debieran corresponderle por consecuencia de la declaración de dicha filiación.

\*        \*        \*        \*        \*        \*        \*

"La cuestión no se ha presentado a nuestros tribunales, pero sí ha recibido solución afirmativa por la jurisprudencia extranjera, que de este modo llenó un vacío de la ley." 12 Manresa, Código Civil Español, 2ª. ed., 116.

La autorización que concede el Código para transar, es general y amplísima, y, siendo ello así, la limitación que contiene el artículo 1715 debe aplicarse en sentido restrictivo, como sostiene Manresa.

Cuando del reconocimiento del hijo natural por parte del padre o de la madre no queda constancia auténtica y fehaciente, los herederos del padre o de la madre no pueden suplir la omisión por ellos mismos y es necesario que se acuda por los interesados a los tribunales. ¿Pero qué motivo justificado existe para oponerse a que los herederos ofrezcan entregar y en efecto entreguen a los demandantes determinados bienes materiales si con ello contribuyen a poner pronto término a pleitos que, por su naturaleza, son generalmente enojosos, y tampoco con elló en nada afectan al interés social y consiguientemente al orden público?

Nada abiertamente en contrario se ha resuelto por el Tribunal Supremo de España al interpretar el artículo 1814 del Código Civil, y los tribunales extranjeros, según Manresa, han decidido la cuestión en sentido afirmativo, esto es, en el de que es procedente la transacción. Siendo ello así y pareciéndonos que la transacción celebrada es realmente beneficiosa para ambas partes, opinamos que debe declararse sin lugar el recurso interpuesto y confirmar la sentencia apelada.

*Confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf y Aldrey.

Los Jueces Sres. Presidente Hernández y Asociado Hutchison no tomaron parte en la resolución de este caso.